*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 1, 2008

**BY HAND**

The Honorable Robert P. Patterson
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    **United States v. Jackie Ray Walker,**
             **07 Cr. 1091 (RPP)**

Dear Judge Patterson:

      The Government respectfully submits the following in response to the defendant's submission dated August 21, 2008, and in anticipation of the defendant's sentencing, which is presently scheduled for Thursday, September 4, 2008. The defendant — who has thrice been convicted of drug felonies — seeks a sentence of roughly half of the lowest sentence recommended by the United States Sentencing Guidelines. For the reasons that follow, the Government opposes the defendant's request.

### Factual Background

      As laid out in more detail in the PSR, on three occasions, the defendant sold, or attempted to sell, 11 firearms (two of which were stolen) to an undercover ATF agent ("UC"). As far as the defendant knew, however, he was selling those firearms to a cocaine dealer who was shipping the guns to the Caribbean. (PSR ¶¶ 13, 17). During one of his conversations with the UC, the defendant assured the UC that the firearms he was selling were fully automatic — although if they were not, he promised the UC he could make them fully automatic. The defendant also said he was looking to purchase ecstasy pills, for sale down South, because he could make a lot of money for them. The defendant was arrested in North Carolina on his way to deliver five of the firearms to the UC, in New York. He immediately attempted to cooperate by arranging a sting on his buyer (the UC), but that attempt was short-lived and ended when ATF determined who the defendant's buyer was.

### Legal Principles

      The Guidelines still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005) and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005), although they are no longer mandatory. "[A] district court should begin all sentencing

Hon. Robert P. Patterson
September 1, 2008
Page 2 of 6

proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark." *Gall* v. *United States*, 128 S. Ct. 586, 596 (2007). The Guidelines' relevance throughout the sentencing process stems in part from the fact that, while they are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 127 S. Ct. 2456, 2463 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 128 S. Ct. at 594.; *see also Rita* v. *United States*, 127 S. Ct. at 2464. After making the initial Guidelines calculation, a sentencing judge must then consider seven factors outlined in Title 18, United States Code, Section 3553(a), and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing outlined in Section 3553(a)(2). *Gall* v. *United States*, 128 S. Ct. at 596-97.

**Discussion**

The defendant's multiple prior criminal convictions (and incarcerations) have failed to deter him. Instead, his criminal conduct has only become more severe over time, moving from misdemeanors and other petty crimes to drug trafficking and, now, firearms trafficking. Along the way, the defendant frequently received the benefit of leniency, in the form of parole or probation. Instead of taking advantage of it, he violated his probation or parole at least four times, and continued to re-offend. Neither his initial attempt to cooperate with the Government nor his upbringing warrants the significant departure he seeks from the Guidelines range. Instead, the Government contends, a sentence within the Guidelines range of 100 to 125 months' imprisonment is sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing, including, especially, deterrence and avoiding unwarranted disparities in sentencing.

A.   The Defendant's Criminal History

Although some of the defendant's multiple criminal convictions are not significant enough to warrant a criminal history point, together they show a consistent pattern of lawlessness that undermines the defendant's submission. Two aspects of the defendant's criminal history are especially notable. First, the defendant was convicted of three drug felonies over a period of about five years, and a fourth federal narcotics trafficking charge is pending in Georgia.[1] All four charges involved cocaine. Although the defendant's first two narcotics

---

[1] According to the police report for the incident, on or about April 19, 2007, the defendant was stopped in a car while carrying approximately 1.5 kilograms of cocaine (not 400 grams, as the PSR contends). After officers found the cocaine, and before they could secure the defendant, he fled on foot. (PSR ¶ 54). He was subsequently indicted on or about March 13, 2008 by a federal grand jury in the Middle District of Georgia.

Hon. Robert P. Patterson
September 1, 2008
Page 3 of 6

convictions were for simple possession,[2] in evaluating what is required to deter the defendant (and others) from committing federal crimes, including gun trafficking, this Court should consider, among the defendant's history and characteristics, the pattern of his narcotics activity, and that fact that the current crime – gun trafficking – appears to be an escalation of his criminal conduct.

Second, the Government respectfully submits that the Court should consider the defendant's failure to comply with the terms of his probation and parole. The instant offense itself represents a violation of at least one order of probation or parole. (PSR ¶ 50). Previously, according to the PSR, the defendant's probation or parole was revoked four times. (PSR ¶¶ 37, 39, 41, 43). His repeated disregard for the conditions of his liberty in the community counsels in favor of a substantial period of incarceration.

In sum, the defendant's significant criminal history — much of which does not affect the Guidelines calculation — suggests that he cannot be deterred and should therefore be confined. He has shown little regard for his obligation to obey the law, and has instead engaged in offenses — drug dealing and firearms trafficking — that pose significant threats to public safety. Counsel is wrong to suggest that a significant sentence under the Guidelines should only be imposed if a defendant has first served a similar period of incarceration, because otherwise, it is unclear whether a lesser sentence will deter the defendant. (Def.'s Ltr. at 7.) The Court has more than enough information to determine that the defendant is not easily deterred, and that he will likely return to criminal activity when he is released from prison on the instant charges unless he serves a significant period of incarceration.

B.    The Defendant's Initial Attempt at Cooperation

While the defendant's willingness to cooperate with law enforcement at the time of his arrest in North Carolina is a point in his favor that the Court can consider in fashioning a sentence pursuant to 18 U.S.C. § 3553(a), it is a significant exaggeration to say, as counsel does, that, "The only reason Mr. Walker does not stand before the Court with a cooperation agreement and a 5K1.1 motion is because" he was offering to cooperate against an undercover officer. (Def.'s Let. at 2.) The defendant should not receive significant credit merely because he, like many other defendants who are caught red-handed, sought to shift law enforcement's focus to someone else.

As the Court knows, under the Sentencing Guidelines, a defendant does not have

---

[2] Were that not the case, he would be subject to the enhanced penalties of 18 U.S.C. § 924(e). The Government notes that there is no suggestion that the defendant himself was using cocaine. During his presentence interview with Probation, the defendant indicated only marijuana use. (PSR ¶ 81).

Hon. Robert P. Patterson
September 1, 2008
Page 4 of 6

the right to move on his own behalf for a downward departure for his alleged assistance to the Government. Only the Government can make such a motion, and without it, the Court cannot order a departure on this basis. U.S.S.G. § 5K1.1; *see United States v. El-Gheur*, 201 F.3d 90, 93 (2d Cir. 2000) (citing *United States v. Agu*, 949 F.2d 63, 67 (2d Cir. 1991)); *United States v. Gonzalez*, 970 F.2d 1095, 1102 (2d Cir. 1992) ("downward departure[] based on 'substantial assistance' to the Government may be made only where the Government has moved pursuant to section 5K1.1."). Accordingly, the Court cannot and should not grant a downward departure under § 5K1.1.

Nor should the defendant be given a non-Guidelines sentence based upon his short-lived and unsuccessful attempt to cooperate with the Government. As a general matter, federal cooperators are extensively debriefed and required to proffer all of their past criminal conduct of any kind. They then plead guilty to their worst offenses. By contrast, the defendant here has not met with the Government or otherwise disclosed anything about his criminal history, which (uncharged) history could imply a Guidelines range far in excess of 100 to 125 months. Because he has not admitted to his prior criminal conduct in a way that could increase his exposure, as federal cooperators are required to, the defendant should not receive a reduction in his sentence that federal cooperators may receive as a benefit for their admissions and assistance.

Federal cooperators are also usually required to testify, as needed, in grand jury proceedings, trials, and sentencing hearings. By testifying publicly, they may put themselves and their families at risk. If they lie, or otherwise commit wrongdoing in violation of their cooperation agreements, in the ordinary course, their cooperation agreements are torn up, and they receive no benefit for their aborted cooperation (and cannot withdraw their guilty pleas). Finally, even if a cooperator complies with his agreement, if he has failed to provide "substantial assistance" to the Government, the Government is not obligated to move for a departure, and he may receive no benefit for his cooperation at all. *See, e.g., United States v. Resto*, 74 F.3d 22, 25 (2d Cir. 1996) (prosecutors have "broad latitude" in determining whether a defendant has provided substantial assistance). In short, successful cooperation with the Government — the kind of cooperation that results in the level of variance from the Guidelines range that the defendant seeks here — carries with it a host of obligations that a defendant must successfully fulfill. Only when he does fulfill them is the public interest in punishing the defendant for his own culpability outweighed by the benefit he has provided to law enforcement. The defendant has neither borne the risks of cooperation nor fulfilled its obligations. Accordingly, his initial attempts to cooperate with the Government do not justify the non-Guidelines sentence that he seeks.

C.     The Defendant's Background

Hon. Robert P. Patterson
September 1, 2008
Page 5 of 6

The defendant's loss of his mother at a young age and the consequences for his upbringing are tragic. As counsel notes, however, a departure from the Guidelines range based on childhood neglect is warranted only where the childhood abuse was "extreme" *and* "caused mental and emotional conditions that contributed to the defendant's commission of the offense." *United States v. Rivera,* 192 F.3d 81, 85 (2d Cir. 1999). In *Rivera*, the defendant was born of a familial rape, spent time in foster homes after his stepfather was killed when the defendant was eight years old, and was physically abused by being burned, beaten with extension cords, and forced to kneel on rice in a corner. *Id*. at 86. Nevertheless, the Second Circuit upheld the district court's decision not to depart in that case, because the defendant had "failed to allege and show, as required for a § 5H1.3 departure, that any abuse he may have suffered rose to the extraordinary level that can be assumed to cause mental or emotional pathology." *Id*. Regrettably, "[c]hildhood abuse and neglect are often present in the lives of criminals. They always affect their mental and emotional condition." *United States v. Vela*, 927 F.2d 197, 199 (5th Cir. 1991). But "*Rivera* explicitly limits the situations in which a departure based on abuse is warranted to those in which the abuse creates to a mental condition that in turn leads to or causes the criminal conduct." *United States v. Reinoso*, 350 F.3d 51, 58 (2d Cir. 2003).

Even granting that the abuse of the defendant in this case was extreme (which is not necessarily clear), it is attenuated from the offense conduct. There is no explanation for why the neglect of the defendant led him to traffic in firearms some 12 years (and multiple convictions and incarcerations) later. Society simply cannot tolerate unlawful behavior (with serious public safety consequences) by every individual who was abused as a child, as depressingly common (and unjustified) as that abuse may be. At the root of every criminal prosecution is a moment of choice, where the individual defendant decides that instead of taking the law abiding path, he will break the law. Here, as in many other cases, the defendant was motivated by a desire for money. The choices by the defendant that led him to this Court would have (in the UC's absence) led to the dissemination of 11 firearms, likely with grave (if not deadly) consequences. Nothing about the defendant's upbringing so clouded his judgment as to create a "pathology" or other mental condition that caused him to commit the offense conduct, however, and neither a departure nor a non-Guidelines sentence is warranted in this case because of the defendant's childhood abuse.

Hon. Robert P. Patterson
September 1, 2008
Page 6 of 6

## Conclusion

        For the foregoing reasons, the Government respectfully submits that a sentence within the Guidelines range would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

                                            Respectfully submitted,

                                            MICHAEL J. GARCIA
                                            United States Attorney

By:       \s_____
        Adam S. Hickey
        Assistant United States Attorney
        Tel.: (212) 637-1039

cc: Dawn Cardi, Esq. (by facsimile)